In the Matter of the Estate of HERMAN E. SCHOENEWERG, Deceased.

Surrogate's Court, New York County, October 7, 1936.

*Philip Birnbaum* [*John J. O'Connell* of counsel], for the petitioner.

*Uniacke & Kelley* [*Joseph R. Kelley* of counsel], for the trustee, respondent.

DELEHANTY, S.   By the will of deceased he bequeathed to his son his business and all bank accounts and directed the cancellation of an indebtedness apparently owed by the son at the date of the will. He made other small gifts and then put in trust for the life of his widow all the rest of his property and constituted his son the sole remainderman.   Petitioner here was named as cotrustee but he did not qualify.

In early 1933 petitioner became entitled as remainderman to delivery of the property in the trust, the life tenant (his mother) having died.   Sometime after his mother's death petitioner received a call from the trustee and went to its office where he conferred with the persons there familiar with the trust affairs.   The trust had been operated for a period of about fifteen years.   When he attended in May, 1933, at the office of the trustee he was handed an account in a form (petitioner's Exhibit 4) such as would be receivable for filing in the Surrogate's Court.   In this account was a statement (a) of the original principal of the trust, (b) of all transactions in

the principal account including sales and reinvestments, (c) of the expenses paid, and (d) of the securities in the hands of the trustee. In it was an income statement in which each of the securities in turn was referred to and in which the amount of interest collected was stated in detail. It also contained a statement of the various sums of income paid to the life tenant including a final payment to her estate as of April 20, 1933. In this petitioner's Exhibit 4 was included the data concerning an investment made in 1924 in a participation in a first mortgage on property known as Albee Court. The income account showed the collection of interest on this participation down to and including January 30, 1932. A separate schedule showed as part of the securities on hand a certificate of deposit for this participation. The petition asserts (¶ 15) that among the papers turned over to petitioner was this certificate of deposit. He produced the certificate and it is in evidence as petitioner's Exhibit 2. It is executed by the accounting trustee in its corporate capacity as a depositary for the bondholders committee. Petitioner signed a receipt for the securities delivered to him. This is in evidence as petitioner's Exhibit 5. He also signed an instrument which is in evidence as petitioner's Exhibit 3 and which constitutes a waiver and release running from himself, as remainderman, to the trustee. The question presented is whether that release may be set aside and the trustee now compelled to file an account.

Petitioner testified that when he attended at the office of the trustee he was shown the securities, the receipt and the release and was told that the trustee would account through the court or would adjust the matter with him. He testified that he knew the nature of the papers which he signed. His recital of the events occurring at the visit establishes that no misrepresentation was made to him and that he was wholly a free agent in deciding on the course to pursue. His recital shows that he asked few questions. He makes no claim that answer was refused to any question or that any answer given was not correct. Through his counsel he takes the position now that in the history of the trust administration there existed facts which if known to him would have led him to disavow certain transactions of the trustee. Counsel asserts that there was an affirmative duty upon the trustee to disclose to petitioner of its own initiative and without question on his part all of the facts that might be urged in criticism of the trustee's management of the trust. He urges that the failure of the trustee so to volunteer this information to petitioner constituted in law a fraud upon petitioner which suffices to authorize the vacating of the release signed by petitioner.

The case has been submitted for a ruling on this question of law. No testimony in fact has been taken as to whether there existed even the slightest basis for criticism of the trustee. The pleadings put in issue every charge of mishandling of the trust. Because at the close of the hearing of petitioner's case the court deemed it doubtful whether petitioner could succeed, the parties were instructed to brief the subject on the assumption (indulged in without any evidence to support it and solely for the purpose of determining whether further proof would be taken) that purchases were made by the trustee which, had petitioner known of them and had an account been filed in this court and had objections to the purchases been filed in due time, would have entitled him to an order of the court requiring the trustee to take over the investment itself and substitute cash. The ruling here made is based upon that assumption though in justice to the trustee the court should reiterate that no proof on the subject was taken and of course no finding is made in fact that any such right to surcharge ever existed in favor of petitioner.

At the time of the transaction between petitioner and respondent the trust had ended. There was a duty to account resting upon the trustee. There was a right to compel an accounting enuring to the petitioner. There was no compulsion that the account must be made in a legal tribunal. (Surr. Ct. Act, § 251.) There was no prohibition against the making of a private account and the making of an adjustment without court intervention. The parties at the time of the transaction between petitioner and respondent were dealing each in his own interest. Respondent was then possessed of property which petitioner had the right to demand. That property was no longer the capital of a trust. It belonged to petitioner. The sole remaining phase of the former trust administration was the obligation to account.

The trustee was not acquiring any of the trust property for itself. No case has been called to the attention of the court which puts upon a trustee in the circumstances here present any duty of affirmatively advising a remainderman that if he pursued one course of action rather than another he might impose liability upon the trustee. Here the account disclosed the purchase and the default and the reorganization proceedings and the deposit of the mortgage participation. He was given only a deposit receipt, not the mortgage participation. The avenues for inquiry were all indicated. The possibility that basis for surcharge might exist was at least indicated. Doubt is expressed by his counsel whether he was equipped to protect his rights adequately. While testifying he seemed to the court to be slow of comprehension but he reiterated

that he knew the nature of the instruments which he signed. The court cannot indulge any presumption that he was lacking in capacity and must dispose of his application as one by an adult and competent person. There being knowledge on his part of the nature of the instrument signed by him, there being on his statement no failure to answer his questions and no misstatement to him, there being presented to him an accounting which gave him the basic information which he could have used if he chose to inquire further into the transactions of the trustee, and there being a choice of courses available to him, he took the securities as they were delivered to him and signed a receipt for them and gave a release which dispensed with an account. If thereby he cut himself off from a right to inquire further into the transactions of the trustee he is without remedy.

It is the current practice in this court for fiduciaries to file reports of their transactions in form quite like the account in evidence (petitioner's Exhibit 4). An account so filed is accessible to all parties interested in the estate. A petition for the settlement of the account is filed and on the basis of that petition and the account a citation is issued to all parties in interest. The parties then have the right to object if they choose. If they default in appearing, or if — having appeared — they file no objections, a decree follows settling the account as filed. It would leave the administration of estates wholly without finality if any such rule were to be applied to the ordinary accounting process as is here contended for by petitioner. His position is no different than if he had defaulted on an accounting filed in this court. In such case he would have been concluded by the decree. The fact that the account as filed said nothing about the original purchase would not authorize petitioner to come in and say that the account was fraudulent. If the courts were now to declare that decrees might be set aside whenever an account failed to give the entire history of each transaction of purchase and sale by a fiduciary the whole process of accounting which has been established by decades of practical administration by the courts would be upset. If any presumption were to be indulged against such accounts there would be no end to the inquiries as to whether the disclosure of details of administration was sufficient. The only practicable rule is that when the account is presented a person who seeks a surcharge must affirmatively attack the account. Where a fiduciary seeks court discharge from liability he is not, within the meaning of the authorities, seeking a benefit at the expense of his *cestui que trust*. He is not acquiring the property of the *cestui que trust*. He is not entering into a contract with the *cestui que trust*. The rule which establishes

presumptive fraud (Perry Trusts [6th ed.], § 194 *et seq.*) is not applicable to the process whereby a trustee merely seeks quittance. In a trust administration there is an expectancy that at some future date the trustee will seek and be entitled to discharge. The relationship contemplates that then the parties will be at arm's length. The trustee will be seeking discharge and will be subject to attack; the beneficiary will be seeking full recognition of his rights and will be free to attack. The doctrine of presumptive fraud does not reach that situation.

There was here no actual fraud. On the contrary, petitioner's own testimony establishes the propriety of the transaction so far as the trustee is concerned. In such circumstances the release signed by petitioner is a complete bar. His application to set it aside and to compel the trustee to account should be and is denied.

Submit, on notice, order accordingly.