In the Matter of the Estate of CATHERINE JAMES, Deceased.

Surrogate's Court, New York County, April 16, 1940.

*Stewart & Shearer*, for the petitioner.

*Eli J. Blair*, for the respondents.

FOLEY, S. The facts developed on the trial of this contested accounting proceeding are almost identical with those in *Matter of Schoenewerg* (277 N. Y. 424, affg. 160 Misc. 819) and with those in my decision in *Matter of Blodgett* (171 id. 596). They involve primarily the legal effect of a written agreement executed by a beneficiary approving an informal account and discharging the trustee.

Here, Fannie J. Anthony, the life tenant of the trust, died on October 13, 1935. Her daughter, the objectant, Helen Van Zile Anthony, became entitled to the entire remainder of the trust. The representatives of the United States Trust Company, the trustee, thereupon prepared an informal account and an agreement which was to be executed by the remainderman and the executor of the deceased life tenant. The purpose of this agreement was to settle the account without the necessity for judicial proceeding. Its terms provided, in effect, for an approval of the informal account and a release of the trustee and the delivery of the assets of the trust to the remainderman. The proposed agreement and the account were forwarded to the objectant with a letter urging her to examine the provisions carefully and to return the agreement when executed if it was satisfactory to her. In the process of examination of the documents the objectant had the benefit of the advice of an attorney of long experience. Modifications were suggested by him for insertion in the account. The agreement was finally executed by the objectant on May 26, 1936. Thereafter the securities capable of delivery were forwarded to her and assignments of the two certificates of participation in mortgages, which constituted investments made by the trustee pursuant to former section 188 of the Banking Law, were likewise sent to her. Her formal receipt for the assets was dated June 8, 1936, and was forwarded by her attorney to the trustee by his letter of July 28, 1936.

In the period prior to the execution of the agreement and in the subsequent period up to the time of the signing of the receipt for the securities, ample opportunity was afforded to the objectant and her attorney to inquire into the acts of the trustee and the nature of the investments.

Upon these facts the surrogate holds that the objectant is barred by the agreement and release and the approval of the account executed by her. As in *Matter of Schoenewerg (supra)*, there is no claim of fraud practiced upon her. Indeed, the evidence in the proceeding shows that there was no possibility of fraud or imposition. Many months after the consummation of the transaction and the final discharge of the trustee, the objectant, through her attorney, began to complain of the reduction of interest on the mortgage participation certificate of $10,000 which was one of the former assets of the trust. That certificate was then held in a so-called " temporary agency account " by the former trustee for the benefit of the objectant in her individual capacity as its owner.

The objectant then began an action in the Supreme Court for conversion upon the theory that the original investment made by the trustee in 1931 in this participation was illegal. Certain additional transactions were complained of which antedated the agreement of May 26, 1936, and the receipt of the trust securities on June 8, 1936. Further allegations in the complaint involved the conduct of the former trustee after June 8, 1936, in making reductions in the rate of interest and in making other modification of the terms of the mortgage, without the consent of the objectant. In great part this action, therefore, constituted a repudiation by the objectant of the agreement previously made by her, for it represented an attempt to reopen the account as to transactions prior to the date of the agreement.

It will be noted that the action brought in the Supreme Court was for conversion. It actually involved the alleged negligence of the trustee in making the investment in the mortgage participation. Apparently the plaintiff assumes that she is entitled as a right to a trial of the action by a jury. It would be a novel but disastrous departure if beneficiaries could bring separate actions at law for damages based upon alleged acts of negligence or other basis of surcharge against a fiduciary. Under the system of concentration of the disposition of all questions involved in the fiduciary's conduct, in an accounting or other appropriate proceeding in the Surrogate's Court or on the equity side of the Supreme Court, all such questions are determined with all of the parties before the court in an expeditious manner. The development of the jurisdiction of Chancery over accountings grew out of the dissatisfaction and delay resulting from the common-law action of account where the entire action was broken up into a series of separate trials and after the verdict in each trial the result was certified back to the auditor appointed to examine the account. (*Matter of Beare*, 122 Misc. 519; affd., 214 App. Div. 723.) Delay and expense

thereby resulted. That system long ago fell into disuse both in England and in this State. It was supplanted by the more effectual and speedy remedy under the concentrated jurisdiction of a court of equity. (*Malone* v. *Saints Peter & Paul's Church*, 172 N. Y. 269, 276; *Matter of Raymond* v. *Davis*, 248 id. 67, 72.)

The surrogate holds that the agreement of release was binding and conclusive upon the objectant as to all transactions prior to June 8, 1936, when she receipted for the securities and agreed to accept the assignments of the participations in the mortgages. (*Matter of Schoenewerg, supra.*)

The law encourages the making of agreements for the release of fiduciaries and for the approval of their informal accounts principally because they avoid expense and delay. Except where fraud or imposition is shown, such agreements and releases are approved. (*Matter of Voislawsky*, 135 Misc. 877; *Matter of Blodgett*, 171 id. 596; *Matter of Bihn*, Id. 80.) The position of the objectant here is exactly the same as the petitioner in *Matter of Schoenewerg* (*supra*), wherein it was stated that he " may not be heard to say that the accounting trustee owed to him as remainderman an affirmative duty to detail an open state of facts as to which he was content to waive inquiry. There can be no legal implication of impropriety in such a business transaction." (Per LOUGHRAN, J., at p. 428.)

The surrogate finds, moreover, that the contention of the objectant that there were express conditions attached to the approval of the account and the delivery of the securities is unfounded. The transaction was consummated without any undischarged conditions whatsoever. The conditions which are now asserted, if they ever existed, were mere reservations in the mind of the objectant or her lawyer, or most probably afterthoughts which arose subsequent to the date when the transaction of approval, release and discharge was closed by the parties.

Upon the attempted repudiation by the objectant by the bringing of the action in the Supreme Court, the trustee filed its account and supplemental account in this court in a formal proceeding in order to procure its judicial settlement and to obtain a determination as to the validity of the agreement and to close forever its liability to the remainderman. In this procedure it acted clearly within its legal rights and it is entitled to a decree in this court settling the accounts and discharging it from further liability as trustee. (*Matter of Runk*, 200 N. Y. 447, 460 *et seq.*; *Matter of Raymond* v. *Davis*, 248 id. 67, 72.)

Consent was previously given upon an application to this court to transfer the action for conversion from the Supreme Court.

(Surr. Ct. Act, § 40, subd. 9.) Formal approval of the transfer has not as yet been given by decision of the Supreme Court. In view of the disposition of the issues in the pending accounting proceeding there is no further necessity for such transfer to this court, and an order may be submitted vacating the prior order of transfer. The decree herein will be conclusive as to the validity of the agreement of approval and release and the transactions up to June 8, 1936. From that time on the relation between the parties no longer involved that of trustee and beneficiary. The new relation was that of custodian and individual owner, or principal and agent or some other form of personal relation not connected in any way with the decedent's estate.

As to the transactions, however, after June 8, 1936, the action may be properly continued and disposed of in the Supreme Court. The trustee has attempted to litigate these issues in the present proceeding. I hold that they have no place in this forum. The Surrogate's Court is without jurisdiction to determine them. (*Isaacs* v. *Isaacs*, 208 App. Div. 61.)

Division of the jurisdiction between the Surrogate's Court and the Supreme Court is exemplified by the determinations made here. Under the present practice accountings of testamentary trustees are conducted almost without exception in the Surrogate's Court where the will was admitted to probate and this despite the fact that concurrent jurisdiction over such accountings is vested in the Supreme Court. (*Matter of Runk*, 200 N. Y. 447, 460 *et seq.*; *Matter of Smith*, 120 App. Div. 199; *Bloomingdale* v. *Bloomingdale*, 258 id. 231.) The prior commencement of an action in the Supreme Court before the initiation of a proceeding in this court is not a controlling test. In the *Bloomingdale* case (*supra*) an application for the removal of the defendant executrix-trustee was brought in the Supreme Court. The defendant made cross-application there for the removal of the coexecutor and cotrustee. The order denying the motion for the removal of the trial of the issues to the Surrogate's Court in New York county was reversed by the Appellate Division, First Department, in a *per curiam* opinion. The court stated: " We think that in view of the circumstances of this case and also in the interest of convenience and expedition, the litigation here should be disposed of in the forum where judicial action was first sought and obtained." It is significant that in that case no removal proceeding was pending in the Surrogate's Court but all of the proceedings for probate, accountings and those of other nature in the administration of the estate had been conducted in that court.

In the pending proceeding those questions involved in the decedent's estate up to the date of the completion of the discharge of the trustee have been determined by this decision under the full and complete jurisdiction of this court, where the will was admitted to probate and the prior accounts of the fiduciary judicially settled. On the other hand, there has been left to the separate and exclusive jurisdiction of the Supreme Court the power to determine in the action pending there the disputes between the parties as individuals in matters arising after the date of the discharge of the trustee on June 8, 1936, which disputes are entirely disconnected from this estate. (*Isaacs* v. *Isaacs*, *supra*.) Comity between the two courts is thus preserved.

Submit decree on notice settling the account accordingly.