In the Matter of the Accounting of Thomas D. Buck et al., as Administrators C. T. A. of Kathleen L. Buck, Deceased.

Surrogate's Court, Monroe County, March 3, 1953.

*Vilas W. Swan* for administrators *c. t. a.,* petitioners.

*E. James Hickey* for Mary A. Buck, as administratrix of the estate of George S. Buck, deceased, and another, respondents.

*Darrow A. Dutcher* for Hazel G. Buck, respondent.

WITMER, S.  A hearing has been had upon the objections to the account of the administrators *c. t. a.*  Objection is made to the failure of the administrators to charge themselves with rent for the use and occupation by one of them, namely, Thomas D. Buck, a physician, of office space in realty belonging to the estate.  Testatrix became incompetent about three years before her death, and Dr. Thomas D. Buck, her brother, became her committee in September, 1948.  Prior to that time he had occupied said premises and paid testatrix rent in the sum of $65 per month for such office space.  He continued to pay the same amount to himself as committee for a while, and then reduced it to $55 per month and still further reduced it to $50 per month until August 1, 1950.  He paid no rent thereafter.  Testatrix died on March 21, 1951.

Respondents contend that since the doctor was the committee and then became one of the administrators *c. t. a.* he had no right to reduce or dispense with the rent, and hence is liable to pay rent at the rate of $65 per month from the time of his appointment as committee until the premises were sold.

After probate of the will Dr. Thomas Buck as committee accounted in the Supreme Court to this estate for his acts as committee, and since he was also one of the administrators *c. t. a.*, all persons interested in the estate were duly cited in that proceeding, and some appeared therein by counsel.  The decree of the Supreme Court entered therein approved the account of the committee, and no appeal was taken therefrom.  This court has no authority to reopen or reconsider the matters determined by said decree, and the objections relating to payment of rent for periods prior to testatrix' death are dismissed.

The evidence shows that at and after August 1, 1950, Dr. Thomas Buck was infirm and discontinued his practice of medicine.  A few months later the services of his office nurse were terminated.  Thereafter and until the premises were sold by the administrators *c. t. a.* in February, 1952, the doctor left his equipment in the office and visited it daily, when able, but did no work.  " He just sat there and looked out of the window. "  The doctor as committee for testatrix tried to rent the office to other doctors, and the nurse testified that while she was there after the doctor quit practicing he had signs in the windows advertising the office for rent.  After the administrators *c. t. a.* were appointed they tried, without success, to rent the office, until they sold the property.

It appears that the office was old and not suitable for a modern doctor's office, and because of that and other reasons, including location, it could not be rented without the expenditure of considerable money for alterations and improvements. It further appears that the doctor made no use of the premises during this period of any value to himself, and maintained occupancy only with the hope of aiding in the rental and eventual sale thereof.

It was proper for the administrators *c. t. a.* to submit the issue between one of them and the estate for the determination of the court in this accounting proceeding (Surrogate's Ct. Act, § 209), and the administrators are not bound by the amount of rent payable per month prior to testatrix' incompetency, without amelioration or redress. Although there is testimony that for storage purposes the office was worth $15 per month, under the circumstances here existing there is no justification for penalizing the doctor and charging him with any rent therefor during the period in question. This objection is, therefore, dismissed and the account approved in this respect.

Testatrix made a specific bequest of certain furniture to her sister, Helen G. White, respondent. Thereafter the latter duly executed and acknowledged to the administrators *c. t. a.* the receipt of said furniture, and the receipt is on file in this court. Said respondent did not appear in person upon the hearing herein. It appears that she lives in an apartment in the premises lately owned by her brother, Dr. George S. Buck, deceased, whose estate appears herein through his widow and executrix, the respondent Mary A. Buck; and Mary A. Buck also has a power of attorney to act for respondent Helen G. White in this proceeding.

Respondents' only objection concerning the furniture is that the administrators told them that they must move it within a certain time, and when they sent a truck for it a third person or third persons declined to let them take some of it then. It appears that the truck called for the furniture a week or more before the date which the administrators stated was the latest time for its removal. Respondents acknowledge that the furniture in dispute is available to them now, but they seek to charge the administrators with respondents' prospective additional expenses by reason of the foregoing. What such additional trucking expenses will be does not appear.

The administrators *c. t. a.* have no obligation to recover for a legatee property specifically bequeathed to such legatee. (*Matter of Columbia Trust Co.*, 186 App. Div. 377; *Matter of*

*Fichtner,* 116 N. Y. S. 2d 483.) Whether or not it would be possible in any case to make a valid claim in this court against an executor for unnecessary expenses incurred by reason of his telling a specific legatee that the legacy could be obtained at a certain time and place when in fact it could not be so obtained, no proper case has been established herein against these administrators *c. t. a.,* and this claim in the form of an objection to the account is dismissed.

All other objections filed have been withdrawn except those concerning a contract entered into between Dr. George S. Buck and Gerald C. Buck, both now deceased, and Thomas D. Buck, one of the administrators *c. t. a.* The objections are (1) that the court has no jurisdiction with respect to the contract, and (2) if the court takes jurisdiction thereof that the contract is void for lack of consideration, and (3) that since the share of the estate of Gerald C. Buck, consisting of an annuity, was made nonassignable, no part thereof may be charged against it, and (4) that the terms of the contract require that only half of the total obligation, if any, arising thereunder be chargeable to the share of the estate of Dr. George S. Buck. All parties agree that no charge may be made against the nonassignable annuity for Gerald C. Buck; but in behalf of Dr. Thomas Buck it is contended that the full obligation of the agreement constitutes a charge against the share of Dr. George S. Buck, deceased.

Testatrix nominated Drs. George S. Buck and Thomas D. Buck as executors of her will. Since Dr. George S. Buck was a Canadian and a resident in Canada he was disqualified (Surrogate's Ct. Act, § 94). Because Dr. Thomas Buck was infirm, the others interested in the estate wanted a bank to serve as estate fiduciary, but in view of the size of the estate the suggested bank did not wish to act with Dr. Thomas Buck unless it were to be paid a full commission. Dr. Thomas Buck did not wish to renounce or to let the bank serve with him on such terms, unless he was assured of a full commission. Therefore, the following agreement was executed by Dr. George S. Buck and Gerald C. Buck:

AGREEMENT made this 18th day of April, 1951, between GEORGE S. BUCK and GERALD C. BUCK of the first part,
and
THOMAS D. BUCK of the second part.
WHEREAS, the parties of the first part are distributees of the estate of Kathleen L. Buck, deceased, in whose will the party of the second part is named as Executor, and said parties of the first part have requested that the administration of said estate be placed in the hands of said Thomas D. Buck and

Security Trust Company of Rochester as Administrators with the Will Annexed, the party of the second part renouncing as Executor; and

WHEREAS, the Trust Company would require the payment to it of the entire amount of the legal allowance for Administrator's fees,

NOW THEREFORE, in consideration of the party of the second part renouncing as Executor, the parties of the first part hereby agree that out of their respective shares they will contribute to the party of the second part an amount equal to the commissions which shall be allowed said Trust Company as such Administrator.

WITNESS the hands of the parties of the first part the day and year first above written.

G. S. Buck

Gerald C. Buck

Upon the signing of the above agreement Dr. Thomas Buck renounced as executor of the will and consented to act as administrator *c. t. a.* with the bank, and letters were so issued.

Dr. Thomas Buck contends that the agreement constitutes an assignment and a direction to the court to take out of the share of the estate of George S. Buck and pay to him a sum equal to the commissions payable to the bank. He relies upon *Matter of Raymond* v. *Davis* (248 N. Y. 67); *Matter of Auditore* (223 App. Div. 654, 659, mod. on other grounds 249 N. Y. 335), and *Matter of Swift* (200 Misc. 319), and cases cited therein. Respondents contend that the agreement is merely one made *inter vivos,* between three surviving brothers, concerning what two will do for the third out of their shares, that it does not concern the affairs of the decedent, Kathleen L. Buck, and hence that this court has no jurisdiction to consider it or give effect to it (*Isaacs* v. *Isaacs,* 208 App. Div. 61).

In estates of less than $100,000 two or more executors or administrators thereof are entitled to only one commission, which in the absence of agreement shall be apportioned between them " according to the services rendered by them respectively." (Surrogate's Ct. Act, § 285.) Apparently, Thomas D. Buck has agreed that all of the commissions payable from the estate be paid to his coadministrator *c. t. a.* Unless commissions or compensation greater than that provided by said statute are authorized by the will no other commissions or compensation may be paid to the fiduciaries out of the estate as such, and any arrangement for such additional commissions or compensation is void as a matter of public policy. (*Carpenter* v. *Taylor,* 164 N. Y. 171; *Matter of Popp,* 123 App. Div. 2; *Matter of Ross,* 33 Misc. 163, 165.) Nevertheless, an agreement made by the adult distributees for payment of additional compensation to a fiduciary is binding and enforcible against said distributees

(*Matter of Popp,* 123 App. Div. 2, 6, *supra; Matter of McCord,* 2 App. Div. 324), unless it be void for want of consideration. (*Carpenter* v. *Taylor, supra.*) This state of the law, presumably known to the attorney who drafted the above-quoted agreement, sheds some light on the nature of the agreement and the reason for its form. However, if the agreement also contained a clear-cut assignment of shares or authority to the administrator *c. t. a.* to pay the amount out of the promisors' shares, there would be no doubt of this court's jurisdiction. (*Matter of Swift,* 200 Misc. 319, *supra.*)

The agreement recites consideration and states that the promisors " out of their respective shares " " will contribute to " Thomas D. Buck " an amount equal to the commissions ". The agreement on its face does not constitute an assignment of a part of the shares in the estate. No lien is given to the promisee upon the shares of the promisors. No authority or direction is given to the administrators *c. t. a.* to deduct the amount from the shares of the promisors. The amount to be paid out of said shares does not constitute a claim by the estate against the promisors, nor is it an asset of the estate in any way. It is the personal claim of Thomas D. Buck.

The agreement appears to be complete and unambiguous upon its face, and there is no occasion for introduction of testimony to explain it. Any testimony received in this connection subject to being struck out, is hereby struck out upon respondents' motion. The agreement having been drawn by the attorneys for Thomas D. Buck, who is also one of the fiduciaries, it must be construed strictly as to him (see 4 Warren's Heaton on Surrogates' Courts, § 427, subd. 5, par. [a]) and there is no basis for a finding that it constitutes an equitable assignment.

Much as this court approves of the language in *Matter of Raymond* v. *Davis* (248 N. Y. 67, 72, *supra*) and would like to be able to apply it to bring to a prompt conclusion the issues raised herein, it can only do so if it has jurisdiction, i.e., if any issue arising under the agreement concerns the affairs of the decedent herein. The fact that the court has jurisdiction of the parties with respect to estate matters does not confer upon it jurisdiction over them upon collateral matters not concerning the affairs of the deceased. (*Matter of Underhill,* 117 N. Y. 471; *Matter of Grube,* 162 Misc. 578; and see *Matter of Schaefer,* 294 N. Y. 24, 30.) Specifically, the validity, construction and enforcement of an agreement on the part of distributees or residuary legatees to pay extra compensation to a fiduciary is an *inter vivos* matter over which this court has no jurisdiction, where the agreement

does not constitute an assignment of a distributive share in the estate. (*Matter of Young,* 15 App. Div. 285, affd. 160 N. Y. 705; and see *Matter of Simonson,* 271 App. Div. 420; *Josephberg v. Cavallero,* 262 App. Div. 1, 4; *Isaacs v. Isaacs,* 208 App. Div. 61, *supra; Matter of Lessig,* 165 Misc. 706, 709; *Matter of Hoffman,* 143 Misc. 809, and Surrogate's Ct. Act, § 40.)

Although respondents are nonresidents of this State the assets which Thomas D. Buck seeks to use for payment of his claim are within the State, and there are appropriate means available to him in this State to have his rights under said agreement determined in a proper court before the assets leave the State. The objection to the jurisdiction of this court with respect to said agreement is sustained and the application made to have this court construe the agreement is dismissed.

Submit decree accordingly.